UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROGELIO RIOS, | ) | 1:18-CR-00185-LEW |
| | ) | |
| Defendant | ) | |

## DECISION AND ORDER ON
## DEFENDANT'S MOTION TO SUPPRESS

On December 13, 2018, Rogelio Rios was indicted on one count of "knowingly and intentionally possess[ing] with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). Indictment (ECF No. 21). Rios now moves to suppress evidence gathered from the July 12, 2018 stop and search of his pickup truck as well as all information obtained as a result of the search. Mot. to Suppress ("Motion") (ECF No. 35). The motion is **DENIED**.

### BACKGROUND

The parties do not contest the key facts. On July 11, 2018, the Maine Drug Enforcement Agency ("MDEA") received a call from a confidential source indicating that a man named Jared Fogg had rented Room 34 at the Briarwood Motor Inn in Lincoln, Maine, and was there to sell illegal drugs.[1] Response, Ex. 1 ¶ 1 (ECF No. 36-1, #72). This

---
[1] The Agent who received this call indicated the source had "provided credible information in the past." Response, Ex. 1 ¶ 1 (ECF No. 36-1, #72).

source did not indicate which type of drugs Fogg was allegedly selling, but the source did notify the MDEA that Fogg was joined by an "Indian" male and was using a white Ford F250 pickup with Florida plates 578PMW. *Id.* The source also told the MDEA agent that Fogg was carrying a firearm. *Id.*

On the same day, the Lincoln Police Department received a complaint from a co-conspirator who admitted to selling "ice" or "crystal" methamphetamine and heroin in the Lincoln area. *Id.* ¶ 9. This co-conspirator informed police that he received his supply from Fogg and provided details regarding when and where he purchased drugs from Fogg. *Id.* That day, Lincoln Police officers observed the co-conspirator and Fogg together in the parking lot of the Briarwood Motor Inn. *Id*

On the morning of July 12, 2018, an MDEA agent observed a white Ford F250 pickup with Florida registration matching the confidential source's description at the Briarwood Motor Inn. *Id.* Upon conducting a registration check on the pickup, MDEA agents learned the truck was registered to two men from Florida – one of whom was the Defendant, Rogelio Rios. *Id.* ¶ 2. MDEA officers showed a picture of Rios to the confidential source and the source confirmed Rios looked like the man accompanying Fogg. *Id.*

Fogg had been linked to drug activity in northern Maine on multiple occasions prior to the July 12, 2018 traffic stop. On July 13, 2017, a cooperating defendant supplied MDEA with information that Fogg commonly travelled from Florida to Maine and would remain in Maine for 2-3 weeks at a time in order to sell crystal meth. *Id.* ¶ 6. This informant indicated they had seen "Fogg with a gallon sized Ziploc bag full of crystal meth

2

and a large amount of money spread out on the bed." *Id.* On March 16, 2018, another cooperating defendant stated Fogg was the methamphetamine source for the Houlton area. *Id.* ¶ 7. On July 3, 2018, a third cooperating defendant stated Fogg was one of the "big fish" in the Houlton crystal methamphetamine trafficking market and indicated that Fogg drove a "new Florida plated white Ford pickup." *Id.* ¶ 8. Two of the cooperating defendants indicated that Fogg commonly rented a hotel room for the purposes of selling drugs. *Id.* ¶¶ 6, 8.

Based on the reports from the three cooperating defendants as well as the information provided by the confidential source, MDEA obtained a state search warrant on July 12, 2018, for Room 34 and set up surveillance at the Briarwood Motor Inn. *Id.* ¶ 10; Response, Ex. 2 (ECF No. 36-2). Throughout the course of the day, officers observed Rios driving the truck as he made various stops at Walmart, Circle K, and the Daigle Oil Company. Response, Ex. 1 ¶¶ 12-13 (ECF No. 36-1, #75). Officers then observed Rios pick up Fogg from a residence in Houlton, after which Rios and Fogg travelled to several residences and made multiple stops at a local gas station. *Id.* ¶ 13. Rios and Fogg then travelled to Mattawamkeag and stopped at a residence for nearly an hour, during which time officers observed three individuals outside the truck with the doors open, "removing something from the vehicle." *Id.* ¶ 14. Fogg and Rios then returned to Lincoln, stopped at the Lincoln Circle K, and ultimately returned to the Briarwood Motor Inn. *Id.* ¶¶ 14-15.

Upon their arrival at the Briarwood Motor Inn, Lincoln Police Officers conducted a traffic stop on the vehicle. *Id.* ¶ 15. Officers searched Rios's white Ford pickup and

recovered various items including firearms and illicit drugs.[2]  Response, 4 (ECF No. 36, #65).

## DISCUSSION

Rios makes two primary arguments in favor of his Motion to Suppress.  First, he contends that the search of his truck and the resulting seizure of items and information "violated his rights under the 4th and 14th amendments to the United States Constitution and Article 1, § 5 of the Maine Constitution" because the search warrant did not describe the place to be searched – his truck – with "requisite particularity."  Motion, 1 (ECF No. 35, #57).  Second, in response to the Government's contentions, Rios asserts that the "automobile exception" does not apply to the facts of this case and cannot be used to justify the warrantless search of his truck.  *Id.* at 3.  However, as explained below, because law enforcement officers properly searched his vehicle pursuant to the automobile exception to

---

[2] The items collected included:
- A 9 mm loaded handgun with a teal colored grip.  The handgun was found in Fogg's bag.  An NCIC check through dispatch resulted in the firearm having been reported stolen;
- A Keltic PF9 9 mm loaded handgun with a round in the chamber was found in the driver's side center console;
- Suspected black tar heroin weighing 10 grams found on Fogg's person;
- Suspected heroin weighing 32.4 grams found on Fogg's person;
- Crack cocaine weighing 2.2 grams found on Fogg's person;
- Methamphetamine weighing 125.1 grams found in a hide located in the headliner of vehicle;
- U.S. Currency totaling Nineteen Thousand Eight Hundred Eighty-Eight Dollars ($19,888.00) found in Fogg's bag; and
- Three cellular telephones.

Response 4 (ECF No. 36, #65).  On September 19, 2018, law enforcement officers received a federal search warrant for the three cellular telephones recovered during the July 12, 2018 stop and search.  Response, Ex. 3 (ECF No. 36-3).  In support of the search warrant, the MDEA submitted an affidavit detailing the July 2018 events and substantiating the Task Force Officer's belief, based on his training and experience, that a search of the three telephones would "yield[] evidence of contact and association between and among narcotics traffickers, customers and associates."  *Id.* ¶ 17.

the warrant requirement, the "requisite particularity" of the search warrant is irrelevant and will not be considered for purposes of this Motion to Suppress.

I. **AUTOMOBILE EXCEPTION**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. As a general rule, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the "automobile exception" which provides that "police officers may seize and search an automobile prior to obtaining a warrant where they have probable cause to believe that the automobile contains contraband." *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014); *see also Ornelas v. United States*, 517 U.S. 690, 693 (1996) ("[A] warrantless search of a car is valid if based on probable cause."); *United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) ("[T]he auto exception . . . provides that '[i]f there is probable cause to believe a vehicle contains evidence of criminal activity,' agents can search without a warrant 'any area of the vehicle in which the evidence may be found.'") (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009)).

Probable cause to search a vehicle is present "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696 (citing *Brinegar v. United States*, 338 U.S. 160, 175–176 (1949)). As stated by the First

Circuit, "[t]he standard is satisfied when the totality of the circumstances create 'a fair probability that . . . evidence of a crime will be found in a particular place.'" *Silva*, 742 F.3d at 7 (quoting *United States v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009)).

The record indicates that at the time law enforcement officers searched Rios's truck – the vehicle in which Fogg was a passenger – they had "ample evidence supporting a finding of probable cause for a search" of the vehicle. *Silva*, 742 F.3d at 7. Fogg's drug dealing activities in Northern Maine had been catalogued by local police and MDEA agents since July 2017. *See* Response, Ex. 1 ¶ 6-8 (ECF No. 36-1, #73-74). These reports indicated Fogg routinely travelled North from Florida with the express purpose of selling illicit drugs in the Houlton area. *Id.* ¶¶ 6, 8. Two of these reports referenced Fogg's use of a "white Ford pickup" matching the description of the vehicle searched. *Id.* ¶¶ 1, 8. Finally, on the day of the search, law enforcement officers had observed Rios and Fogg making various stops throughout Houlton and Mattawamkeag in the white pickup truck and believed these stops were for the purpose of "collecting money and/or delivering drugs to their clientele in Houlton." *Id.* ¶¶ 12-15. This evidence establishes that officers had sufficient probable cause to believe the truck Rios and Fogg had driven throughout the day contained "evidence of criminal activity"; therefore, under the 'auto exception,' officers were free to search "any area of the vehicle in which the evidence may be found" without a warrant. *Polanco*, 634 F.3d at 42.

## CONCLUSION

As discussed above, the search of Rios's truck was lawful and did not require a warrant because it fell within the automobile exception. Defendant's Motion to Suppress (ECF No. 35) is **DENIED**.

**SO ORDERED.**

**Dated this 14th day of March, 2019**

/s/ Lance E. Walker
LANCE E. WALKER
UNITED STATES DISTRICT JUDGE